406 June 7, 2019 No. 19

IN THE OREGON TAX COURT
REGULAR DIVISION

John T. HOGGARD
and Mary T. Burry,
*Plaintiffs,*

*v.*

DEPARTMENT OF REVENUE,
State of Oregon,
*Defendant.*

(TC 5336)

Plaintiffs appealed to the Regular Division after Plaintiffs' case was dismissed in the Magistrate Division for failure to timely appeal without good and sufficient cause. Plaintiffs were not represented by lawyers at the Magistrate Division and the defendant, the Clackamas County Assessor, moved to dismiss the case on the grounds that Plaintiffs failed to appeal to the Magistrate Division within 90 days of receiving an "Omitted Property Notice." Plaintiffs conceded that they had untimely filed, and the magistrate did not find the Plaintiffs had good and sufficient cause. At the Regular Division, Plaintiffs (then represented by counsel) requested that the court determine that their appeal to the Magistrate Division was timely because the assessor had sent the "Omitted Property Notice" *before* correcting the roll although, under ORS 311.223(2), the 90 day period to appeal commences when the assessor sends a notice "after" the assessor corrects the roll. Defendant conceded that Plaintiffs' appeal to the Magistrate Division was timely but filed a motion to dismiss on the grounds that the case was moot as a result of its concession and because the assessor had withdrawn the assessment. The court held that (1) Plaintiffs' appeal to the Magistrate Division was timely, and (2) Plaintiffs' case was not moot because, under ORS 14.175, the county assessor's actions were capable of repetition yet evading review. The court dismissed without prejudice Plaintiffs' claim for abatement of the omitted property assessment and did not rule on attorney fees in this order. For the court's ruling on attorney fees, costs, and disbursements in this case, see *Hoggard II v. Dept. of Rev.*, 23 OTR 543 (2019).

Submitted on Plaintiffs' Motion for Entry of Judgment and Attorney Fees and Defendant's Motion to Dismiss.

Jason A. Wright and Melina Martinez, Richardson Wright LLP, Portland, filed the motion and response for Plaintiff.

Daniel Paul, Senior Assistant Attorney General, Department of Justice, Salem, filed the motion and response for Defendant.

Decision rendered in part for Plaintiff and in part for Defendant June 7, 2019.

## ROBERT T. MANICKE, Judge.

This matter comes before the court on Plaintiffs' letter to the court dated February 25, 2019, which the court views as either a motion for entry of judgment on the pleadings or a motion for summary judgment, and a motion for leave to file an attorney fee claim; on Defendant's Motion to Dismiss; and on the parties' various responses.

Plaintiffs appeal from a magistrate's Final Decision of Dismissal, in which the magistrate (1) found that Plaintiffs had conceded that their appeal to the Magistrate Division was untimely; and (2) considered, but rejected, Plaintiffs' arguments that their failure was for "good and sufficient cause" under ORS 305.288(5).[1] In this division, Plaintiffs seek a determination that their appeal to the Magistrate Division was timely, that they are not subject to the tax at issue, and that they are allowed to seek attorney fees under ORS 305.490(4).

The record, as developed to date in this division of the court,[2] shows the following uncontested facts: The subject property is Plaintiffs' personal residence. On June 29, 2017, the Clackamas County Assessor mailed an "Omitted Property Notice" to Plaintiffs (the "2017 Notice"). The 2017 Notice asserted that a kitchen and bath remodel had been omitted from the assessment roll for the tax years 2015-16 and 2016-17. The 2017 Notice stated in part:

> "In compliance with ORS 311.219, this notice is to inform you of the Assessor's *intention to add the property value listed below to the Assessment Roll* for the years indicated. The omitted property is: a kitchen and bath remodel.
>
> "* * * * *
>
> "You can show cause why this additional value should not be added to the Assessment Rolls prior to 5:00 p.m. on July 19, 2017. If we have not heard from you by this time, this value will be added to your assessment. If you agree

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

[2] The court considers only the record before it, which includes documents from Magistrate Division proceedings or other prior proceedings only to the extent that a party places those documents into the record in the Regular Division. *See* ORS 305.425(1); *Patton II v. Dept. of Rev.*, 18 OTR 256, 261 & n 7 (2005).

with this correction, please sign and return the enclosed
waiver.

"This tax became a matter of public record on March 1,
2017. The additional tax amount will be extended to the
2017-2018 tax year.

"Should you decide to appeal this decision of the asses-
sor, you must file a complaint with the Oregon Tax Court
in the Magistrate Division. *The appeal must be filed with
that court as provided in ORS 305.280 and ORS 305.560
by October 17, 2017, which is within 90 days after our 'show
cause' date of July 19, 2017.*"

(Emphases added.)

Plaintiffs did not appeal by October 17, 2017; they
allege that they experienced family and personal health dif-
ficulties during the fall of 2017. The assessor sent Plaintiffs
their annual property tax statement on October 10, 2017,
and on December 19, 2017, Plaintiffs filed a complaint in the
Magistrate Division, where they represented themselves.
On January 17, 2018, the assessor filed an answer defending
on the grounds that Plaintiffs had missed the deadline of
October 17, 2017, as stated in the 2017 Notice. On February 1,
2018, in the initial case management conference, the magis-
trate asked the assessor's representative how many notices
the assessor had sent and, according to a later email from
the representative, "The Magistrate seemed fairly certain
that 2 separate notices are required." From February 1 to
May 17, 2018, persons in the assessor's office corresponded
with counsel for Clackamas County and with Defendant's
personnel regarding whether two notices are required.
Meanwhile, on March 5, 2018, the assessor, now represented
by counsel, filed a motion to dismiss on the grounds that the
assessor's single 2017 Notice was sufficient and Plaintiffs'
complaint was untimely, and on April 24, 2018, the mag-
istrate issued an order that prompted Plaintiffs to file a
letter "alleging circumstances related to their untimely fil-
ing." On June 22, 2018, the magistrate entered a Decision of
Dismissal, followed by a materially identical Final Decision
of Dismissal on July 12, 2018, which stated that Plaintiffs
had conceded that their complaint in the Magistrate Division
was untimely. Based on that concession, and on a finding of

lack of "good and sufficient cause" for the untimely filing under ORS 305.288(5), the magistrate granted the assessor's motion to dismiss.

Plaintiffs engaged counsel, who timely filed a complaint in this division on September 7, 2018. That complaint seeks a determination that "Plaintiffs filed a timely appeal [to the Magistrate Division] on December 19, 2017" and a determination that Plaintiffs are not subject to the taxes attributable to the omitted property assessment. It alleges, among other things, that Plaintiffs' complaint in the Magistrate Division was timely because Plaintiffs filed it within 90 days after the assessor had mailed the annual tax statement on October 10, 2017. The Department of Revenue, having been substituted for the assessor as defendant by operation of law, admitted that allegation. *See* ORS 305.501(1) (Department of Revenue substituted for county as party upon appeal to Regular Division).

The parties then engaged in settlement discussions which, although unsuccessful in resolving the case, resulted in the assessor issuing a new notice, on February 13, 2019 (the "2019 Notice"), entitled "Notification of Tax Roll Correction." The 2019 Notice states in part:

> "This letter is to inform you that due to the lack of adequate notice regarding the Assessor's intent to add omitted property for the 2015/16 and 2016/17 tax years, we are correcting the tax roll to remove the omitted property.
>
> "* * * * *
>
> "This action leaves the property and additional value omitted from the tax roll. As required by statute, *the Assessor will add the omitted property with proper notification*."

(Emphasis added.)

Thus, at this stage, Defendant has admitted that Plaintiffs' complaint was timely and, in its briefing, has nearly (but not quite)[3] acknowledged that it agrees with Plaintiffs' reasoning as to why the complaint was timely: the 90-day period for filing an appeal to the Magistrate Division did *not* commence on the date of the 2017 Notice (July 19, 2017) because the assessor sent the 2017 Notice

---

[3] Defendant states at one point that the 2017 Notice was "possibly defective."

*before* correcting the roll and failed to send another notice *after* correcting the roll.[4]

The relevant statute provides, in part:

"(2)   Immediately *after the assessor corrects the assessment or tax roll*, the assessor shall file in the office of the assessor a statement of the facts or evidence on which the assessor based the correction and notify the taxpayer by *written notice*, sent by first class mail to the taxpayer's last-known address, of:

"(a)   The date and amount of the correction;

"(b)   If a penalty for failing to timely file a real, combined or personal property return as required by ORS 308.290 is being imposed under ORS 308.295 or 308.296, the amount of the penalty;

"(c)   An explanation of the collection procedures applicable to the corrected amount, or applicable to the penalty; and

"(d)   An explanation of the taxpayer's right to appeal under subsection (4) of this section and the procedures for making the appeal.

"* * * * *

"(4)   Any person aggrieved by an assessment made under ORS 311.216 to 311.232 may *appeal to the tax court within 90 days after the correction of the roll* as provided in ORS 305.280 and 305.560."

ORS 311.223(2) (emphases added). The assessor failed to send any notice after correcting the roll.[5] Defendant does

---

[4] The 2017 Notice itself makes clear that the assessor did not believe the roll correction had already occurred by the date of that notice: "In compliance with ORS 311.219, this notice is to inform you of the Assessor's intention to add the property value listed below to the Assessment Roll for the years indicated."

[5] A longstanding rule of Defendant, which this court applied in *Nicolynn Properties LLC v. Dept. of Rev.*, 21 OTR 320, 323 (2013), provides: "For purposes of ORS 311.223(4) and 311.229 the 'roll is *corrected' on the date the assessor sends the notice* to the taxpayer's last known address by first class mail as required in 311.223(2)." OAR 150-311-0220 (emphasis added). Under the rule, unchanged since its adoption in 2001, the roll correction in this case never occurred, and the 90-day appeal period did not begin to run. Regardless of whether the rule correctly states that the correction does not happen until the notice is sent, it is clear that the assessor here failed to comply with the *statutory* requirement to send a notice after the roll had been corrected.

not contest Plaintiffs' position that the 90-day period commenced nearly two months after the date of the Notice of Omitted Property, on October 10, 2017, when the assessor sent the annual property tax statement that showed the assessment. *See* ORS 305.280(1) (commencing a 90-day appeal period "after the act, omission, order or determination becomes actually known to the person"). The 2019 Notice, however, states that the assessor still intends to properly send notice and thus to begin the process of assessing the property she believes has been omitted. Although Plaintiffs strongly disagree that there is any omitted property to assess, they do not seriously contest the assessor's right to commence a new process (within the statutory deadline), and in fact the court interprets the governing statutes to *require* the assessor to continue to seek to assess any omitted property that the assessor "has reason to believe" has been omitted. ORS 311.216(1). If the assessor does issue a new notice, Plaintiffs once again will be required to appeal to the Magistrate Division within the statutory period if they disagree with the value the assessor determines must be added to the roll. Therefore, for now, the dispute reduces down to Plaintiffs' desire to pursue a claim for attorney fees, in aid of which they ask the court to find in favor of Plaintiffs regarding whether their appeal, as commenced in the Magistrate Division, was timely.

Plaintiffs' motion asserts that Defendant's admission that the Magistrate Division complaint was timely entitles Plaintiffs to judgment in Plaintiffs' favor.[6] Defendant argues, both in response and in its motion to dismiss, that Plaintiffs' case is now moot, *i.e.*, that the court can no longer adjudicate any part of Plaintiffs' complaint, or award any attorney fees, because the 2019 Notice and refund eliminate any active controversy and deprive the court of jurisdiction to enter the judgment Plaintiffs have requested.

---

[6] In their letter dated February 25, 2019, Plaintiffs do not clearly state whether they seek judgment on the pleadings pursuant to TCR 21 B or summary judgment pursuant to TCR 47 ("we ask the court to enter a judgment under TCR 67 granting Plaintiffs relief on their claim—with prejudice—and declaring Plaintiffs the prevailing party"). Defendant does not address this procedural question, relying instead on its mootness defense. The court applies the standard for summary judgment and finds that there is no genuine issue of material fact. *See* TCR 47 C.

The Oregon Court of Appeals recently summarized current Oregon law on mootness as follows:

> "As a general matter, we will dismiss as moot cases '"in which a court's decision no longer will have a practical effect on or concerning the rights of the parties."' *Eastern Oregon Mining Assoc. v. DEQ*, 360 Or 10, 15, 376 P3d 288 (2016) (quoting *Brumnett v. PSRB*, 315 Or 402, 406, 848 P2d 1194 (1993)). The Supreme Court has explained that, although dismissal of nonjusticiable cases was not necessarily required, at least in cases involving matters of public interest, existing case law offers guidance concerning dismissal as a prudential matter. *Eastern Oregon Mining Assoc.*, 360 Or at 15. Under ORS 14.175, however, we may decide an otherwise justiciable case that has become moot if the challenged action is capable of repetition yet evading review. *See Couey v. Atkins*, 357 Or 460, 520, 355 P3d 866 (2015) (holding that a court may hear 'public actions or cases that involve matters of public interest that might otherwise have been considered nonjusticiable under prior case law')."

*Wood v. Wasco County*, 294 Or App 155, 158-59, 430 P3d 575 (2018) (footnote omitted) (claim that county's resolution to terminate participation in an intergovernmental agreement violated public meetings law became moot when county rescinded the resolution and resumed participation). When a case becomes moot, the consequence is that "*the entire case*, including attorney fees, is moot." *Krisor v. Henry*, 256 Or App 56, 60, 300 P3d 199 (2013) (emphasis added) (dismissing dispute over meaning of "public record" for purposes of commencement of limitations period because plaintiff's employment law claim became moot when successful job applicant ceased employment with defendant county fair board).

In this case, the court is persuaded to use its discretionary authority pursuant to the standards that the legislature adopted in 2007 specifically to address cases involving public bodies,[7] ORS 14.175. That statute provides:

> "In any action in which a party alleges that an act, policy or practice of a public body, as defined in ORS 174.109, or of

---

[7] Both Defendant and Clackamas County acting through its assessor are "public bodies" for purposes of ORS 14.175. *See* ORS 174.109.

any officer, employee or agent of a public body, as defined in ORS 174.109, is unconstitutional or is otherwise contrary to law, the party may continue to prosecute the action and the court may issue a judgment on the validity of the challenged act, policy or practice even though the specific act, policy or practice giving rise to the action no longer has a practical effect on the party if the court determines that:

"(1)    The party had standing to commence the action;

"(2)    The act challenged by the party is capable of repetition, or the policy or practice challenged by the party continues in effect; and

"(3)    The challenged policy or practice, or similar acts, are likely to evade judicial review in the future."

There is no question that Plaintiffs, as taxpayers who received an omitted property notice with respect to their personal residence, had standing to challenge the assessment. *See* ORS 305.275 (prescribing general criteria for appeal of an act or omission of a county assessor); ORS 311.223(4) (allowing appeal from an omitted property assessment under ORS 311.216 to 311.232). The court thus reviews whether the criteria of ORS 14.175(2) and (3) are satisfied.

Plaintiffs assert that the assessor's act that led to their first claim—issuing a single omitted property notice in lieu of following the requirements in ORS 311.219 and ORS 311.223(2)—is capable of repetition because the Clackamas County Assessor has not renounced its practice. Defendant counters essentially that the assessor has done just that, pointing to advice from county counsel that "I believe we should change our process to send two notices." However, the court is struck by the many events inconsistent with that advice that occurred thereafter, both in the Magistrate Division and in this division. Specifically, counsel rendered her advice to change the notice process on February 6, 2018, adding, "Otherwise, we are vulnerable to a challenge to the sufficiency of our process in a timely-filed complaint." Counsel stated that Plaintiffs' complaint "may not be timely" but did not explain her reasoning for that statement. One month after that advice, on March 5, 2018, the assessor proceeded to file a motion to dismiss, devoting four paragraphs of

analysis in support of his[8] position that the single notice was adequate. Approximately one month after that, on April 9, 2018, the assessor asked Defendant about the notice procedures by email. Defendant responded on May 17, 2018, unambiguously stating as follows:

> "For omitted property the *taxpayer is given a notice prior to the correction* (20 day show cause letter) and an opportunity to provide evidence that the property should not be added. *After the expiration of the show cause letter* the assessor's office instructs the collector's office to correct the roll. Immediately after this *they are required to send a 2nd notice of the correction to the taxpayer (311.223). The correction is not considered complete until the taxpayer is given the 2nd notice* (OAR 150-311-0220)."

(Emphases added.) At some point taxpayers, presumably unaware of any of this dialogue, apparently conceded that their appeal was untimely and turned their attention to seeking relief on the alternative grounds that their failure to appeal on time was due to "good and sufficient cause" under the special appeal provisions pertaining to alleged overvaluation of dwellings. *See* ORS 305.288(5). In an attempt to establish good cause, Plaintiffs publicly divulged personal details about themselves and family members, including Plaintiff Burry's cancer diagnosis, severe and progressive shortness of breath, chest pain, near fainting and serious cardiac arrhythmia, as well as both Plaintiffs' activities advocating for their dying sister-in-law and two other close family members who were undergoing procedures. These efforts proved unsuccessful, as the magistrate, comparing facts of other cases, could not determine that Plaintiffs' difficulties caused the untimeliness that Plaintiffs had conceded. *Hoggard et al. v. Clackamas County Assessor*, TC-MD 170389G, 2018 WL 3409632 at *2 (Or Tax M Div July 12, 2018).[9]

Based on this sequence of events, the court can only conclude that the assessor chose to persist in asserting

---

[8] The court takes judicial notice that the assessor was Bob Vroman through April 30, 2018, and that Tami Little was sworn in as his replacement on May 3, 2018.

[9] Plaintiffs also claimed, unsuccessfully, that they had been misled by the language of the 2017 Notice. Id. at *3.

a position that counsel had advised was "vulnerable to a challenge" and that was contrary to the clear direction of Defendant as the assessor's supervising body. *See* ORS 306.115 ("The Department of Revenue shall exercise general supervision and control over the system of property taxation throughout the state. The department may * * * give any order to any public officer or employee that the department deems necessary * * *."). Nor can the court understand how this persistence might be justified as an attempt to have the validity of the single-notice procedure adjudicated. The magistrate's decision states repeatedly, and Defendant acknowledges, that Plaintiffs—who are not lawyers and were not then represented by lawyers—had "conceded" that their appeal was untimely. *See Hoggard*, 2018 WL 3409632 at \*1, 2. As a practical matter, this concession made it highly foreseeable that the magistrate would not render a reasoned decision on the timeliness issue, and in fact the magistrate did accept Plaintiffs' concession.[10] Finally, the court finds it significant that, when Defendant admitted timeliness in its Answer in this division, the assessor did not seek to intervene for the purpose of having the timeliness issue adjudicated. Although *Defendant* has admitted that Plaintiffs' complaint was timely, the only evidence of the *assessor's* position is a phrase in the 2019 Notice, stating that the assessor is correcting the tax roll to remove the omitted property assessment "due to the lack of adequate notice regarding the Assessor's intent to add omitted property for the 2015/16 and 2016/17 tax years." Given the assessor's actions to date, the court finds this wholly inadequate to instill any confidence that the assessor will conform to correct notice procedures in the future, either as to Plaintiffs or as to future taxpayers.

Plaintiffs also assert that the act of issuing a single notice is capable of evading review. Defendants argue that the notice itself will *promote* judicial review, as it includes a statement of appeal rights. However, Defendant's argument

---

[10] The record does not specify when or how Plaintiffs conceded untimeliness in the Magistrate Division. Accordingly, the court does not now attempt to thread its way among the rules governing (1) a party's right to shape its case by declining to litigate certain issues and (2) a party's stipulating to how the law works (which does not bind the court). *See, e.g., State v. Lyon*, 304 Or 221, 231, 744 P2d 231 (1987) (parties "may not by stipulation change the law").

relies on the very notice that is the source of the problem here. It is true that the 2017 Notice includes a statement of appeal rights, which the court has reprinted above, but that same statement also contains a specific deadline to appeal that is erroneously early. Because the 2017 Notice merely anticipates the correction of the roll and does not identify a correct date on which the 90-day period commenced,[11] a taxpayer receiving that form of notice would likely give up, as taxpayers nearly did, once the incorrect deadline has passed, not realizing that he or she may have weeks or months left in which to file an appeal after the assessor issues the annual property tax statement. The risk is particularly high for residential property, where the annual tax attributable to an omitted property assessment often will be too low[12] to justify hiring counsel.[13] The court concludes that the short window for appeal (90 days) is comparable to election periods and other situations that courts have held can cause an act to evade review. *E.g.*, *Eastern Oregon Mining Association v. DEQ*, 360 Or 10, 16-19, 376 P3d 288 (2016) (timelines for administrative and judicial review); *Couey v. Atkins*, 357 Or 460, 482-83, 355 P3d 866 (2015) (elections); *State ex rel Smith v. Hitt*, 291 Or App 750, 754, 424 P3d 749 (2018) (same).

Accordingly, without deciding whether the case satisfies all of the traditional requirements for mootness under Oregon case law, pursuant to ORS 14.175, the court hereby finds in favor of Plaintiffs that, as Defendant admits, Plaintiffs' initial appeal was timely. The court rejects the assessor's affirmative defense that was grounds for dismissal in the Magistrate Division. *See Ellison v. Dept. of Rev.*, 362 Or 148 at 162-63, 404 P3d 933 (2017), *adh'd to as*

---

[11] The appeal deadline is only 90 days, whether pursuant to ORS 311.223(4) or ORS 305.280.

[12] For example, a remodel that increases a home's real market value by a hypothetical $100,000 might cause an increase in the assessed (taxable) value of only $70,000 due to Oregon's Measure 50 and implementing statutes. *See* Or Const, Art XI, § 11; *see generally AKS LLC v. Dept. of Rev.*, 23 OTR 300, 316-18 (2019) (computational examples). Assuming a combined tax rate of two percent, the annual increased tax would be $1,400.

[13] The Magistrate Division is an expressly informal forum, in which the great majority of parties are not represented by counsel. *See* ORS 305.501(4); ORS 305.230.

*modified on recons*, 362 Or 527, 412 P3d 201 (2018) (adopting broad view of "in favor of" as used in ORS 305.490(4)); *Comcast Corp. v. Dept. of Rev.*, TC 4909, 2018 WL 1791945 (Or Tax, Mar 29, 2018) (court can decide attorney fee claims relating to substantive claim or claims but not "small procedural disputes within a case"). The court will dismiss without prejudice Plaintiffs' claim for abatement of the omitted property assessment on the grounds that the assessor already has corrected the roll to remove the assessment and has refunded the tax at issue. As in any case, the court will entertain any statement of attorney fees pursuant to Tax Court Rule 68 C.

Pursuant to law, the assessor is free to assess omitted property for any or all of the tax years at issue, within the statutory time deadline to do so. Should Plaintiffs initiate a new appeal in the Magistrate Division from any such assessment for any or all of the tax years here at issue, any party may petition to have the appeal specially designated for hearing in this division without the need for a hearing in the Magistrate Division. If the court grants that petition, to the extent appropriate the court will consider relevant facts in the instant matter, including in the Magistrate Division proceeding in the instant matter, in adjudicating any claim in such new appeal for attorney fees, costs and disbursements. Counsel for Plaintiffs are directed to submit an appropriate form of judgment. Now, therefore,

IT IS ORDERED that Plaintiffs' Motion for Entry of Judgment is granted to the extent that the court's judgment will state that the complaint filed in the Magistrate Division was timely. Plaintiffs' motion is denied in all other respects.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss is granted to the extent that the court's judgment will state that Plaintiffs' complaint filed with this division of the court is dismissed.